Filed 2/17/21  P. v. Richey CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C089145 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE023867) |
| v. | |
| LARRY RAY RICHEY, | |
| Defendant and Appellant. | |

Defendant Larry Ray Richey punched 85-year-old Lawrence Windham multiple times after he parked close to defendant's car at a gas station.  Windham died five hours later from a heart attack.  The pathologist that performed the autopsy of Windham testified he died from a heart attack precipitated by defendant's attack.  Defendant was found guilty of elder abuse likely to produce great bodily injury or death (Pen. Code,

1

§ 368, subd. (b)(1))[1] and battery with serious bodily injury (§ 243, subd. (d)), with the special allegation for the elder abuse charge that defendant personally inflicted great bodily injury on the victim who was 70 years of age and older (§ 12022.7, subd. (c)).

On appeal, defendant argues the pathologist's causation testimony was irrelevant because he was not charged with the death of Windham, and it was also speculative because he could not say defendant's attack definitively caused Windham's death. He asserts the admission of the testimony, and the prosecutor's arguments discussing the testimony, violated his rights to due process and a fair trial. We will affirm.

BACKGROUND

*Trial Testimony*

At trial, three witnesses from the gas station testified to seeing aspects of defendant's confrontation with the victim and him punching the victim on the head multiple times. The video of the incident from the gas station's surveillance camera was also played for the jury.

Windham's wife testified he was at the gas station after he dropped her off at the grocery store. She said he complained his chest and right cheek hurt, just under his eye, after the incident, none of which he complained of beforehand. She testified she did not hear him say his jaw was hurting but she told a police detective a few days after the incident Windham told her his jaw hurt and the jaw pain was not caused by the punch. Windham's wife also said though Windham had gone to the dentist office after the incident, he was late and had to reschedule for the following day. She showered when they returned home and afterwards found Windham unresponsive in his recliner. She called 911 and when the paramedics arrived, they unsuccessfully tried to revive him and took him to the hospital where he was pronounced dead.

---

[1] Undesignated statutory references are to the Penal Code.

2

Dr. Brian Nagao, a forensic pathologist with the Sacramento County Coroner's Office, testified regarding the cause of Windham's death. He was offered as an expert based on him having performed about a thousand autopsies while working both with Sacramento County and as a pathology fellow at the Miami Dade Medical Examiner's Office. He had also testified in court as an expert about 25 times.[2] Dr. Nagao testified Windham had a bruise on the bridge of his nose, bruising on the inside of both eyelids, a skin tear on the left side, bruising to the upper lip, and a bruise in the right upper back of the scalp. Windham also had a lower jaw fracture, about an inch above his chin on both the left and right side. Hemorrhaging of the soft tissue surrounding the jaw indicated the injury was inflicted while Windham was still alive. This type of fracture likely caused Windham pain, but it is also possible Windham did not know his jaw was fractured.

Dr. Nagao concluded Windham's death was caused by "atherosclerotic and hypertensive cardiovascular disease, following blunt-force injuries of the head." He explained this meant Windham had significant heart issues contributing to a sudden cardiac death; someone with Windham's heart conditions could die from sudden cardiac arrest without any excitement. But Dr. Nagao opined the blunt-force injuries suffered shortly before Windham's death from defendant's attack, and mainly the pain from the fractured jaw, precipitated the cardiac arrest. This was based on a review of the surveillance video, the autopsy results, and the lack of evidence for any other source of trauma in the five hours between defendant's attack and Windham's death. Dr. Nagao did not think the paramedics that tried to resuscitate Windham could have broken Windham's jaw because he was dead before they arrived and he could not find any

---

[2]    The trial court did not explicitly accept Dr. Nagao as an expert. The court asked the defense whether it would like to voir dire Dr. Nagao and counsel responded he would do it at cross-examination. The defense did not voir dire Dr. Nagao and defendant does not challenge Dr. Nagao as an expert on appeal.

incidences of a fractured jaw from intubation in the medical literature. However, Dr. Nagao could not definitively say defendant's punches caused the broken jaw.

*Jury Instructions*

The jury instruction for the elder abuse charge, CALCRIM No. 830, required finding defendant "caused . . . Windham to suffer or be injured or be endangered under circumstances or conditions likely to produce great bodily harm or death." It concluded stating an "elder does not need to actually suffer great bodily harm or death. But if an elder does suffer great bodily harm or death, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed the offense." The court included a modified version of CALCRIM No. 240 for the causation element: "An act causes injury, that is the fractured mandible, if the injury is the direct, natural, and probable consequence of the act, and the injury would not have happened without the act. . . . [¶] There may be more than one cause of injury. An act causes injury only if it is a substantial factor in causing the injury."

The parties and the court had an extensive discussion regarding inclusion of CALCRIM No. 240. The prosecutor did not want the instruction because there was no evidence of an alternative cause of Windham's broken jaw other than defendant's punch. The prosecutor also requested adding CALCRIM No. 620, paragraph (C)'s vulnerable victim instruction, which would have required the jury to find defendant was a substantial factor in causing Windham's "death."

The trial court decided it had to include a causation instruction if requested. And since the defense is arguing defendant did not cause the broken jaw, causation is at issue. The court also denied the prosecutor's request to use the vulnerable victim paragraph because it thought it would be confusing to the jury who may think they had to decide, "did the punch ultimately cause his death or did his heart condition cause his death, because the element is great bodily harm or death and that's how the crime is charged," which could make them focus "on his dying, not on the punch in the jaw." The

4

prosecutor noted, "I think the Court understands that the actual fact of his death and the coroner's opinion about it is really only relevant to the last paragraph of the instruction on elder abuse" but "they don't have to find that he caused the death." The court agreed Windham's death is "something they can consider, but they're going to try to say, well, did he cause the death of . . . Windham. And they don't need to do that." The court added to the CALCRIM No. 240 instruction "that is the fractured mandible" to clarify death is "not necessarily the injury that the People are focused on, which is the fractured mandible, which is the great bodily injury, and that is the People's theory."

The prosecutor focused on the last paragraph for the elder abuse charge in his closing argument stating defendant could be found guilty regardless if substantial bodily injury or death occurred because what mattered was that "it's circumstances likely to cause, not actually causing. . . . [¶] . . . [¶] But the end of this instruction 830 is very important. It says if the victim actually does suffer great bodily injury or actually does die as a result of what the defendant did, you can consider those facts heavily in relation to your evaluation of this charge." This was important because, the prosecutor argued, Windham actually "suffered great bodily injury and died as a result of [defendant's] punch."

*Sentencing*

The jury found defendant guilty of both counts and found true the special allegation for the elder abuse charge. At sentencing, the trial court denied probation and considered the mitigating and aggregating factors, including that the "testimony at trial was clear and believed by the jury that the victim's injuries at the hands of the defendant precipitated the fatal cardiac arrest. [¶] The jury found that the defendant inflicted unjustifiable physical pain on . . . Windham likely to produce great bodily injury or death." The court sentenced defendant to the middle term of three years on the elder abuse count and five years for the great bodily injury enhancement. The court imposed and stayed the middle term of three years for battery with serious bodily injury.

5

Defendant argues Dr. Nagao's testimony linking Windham's death to defendant's assault was irrelevant because the prosecution did not charge defendant with Windham's death. This testimony was also speculative because he could not definitively say the punch caused Windham's fractured jaw. This evidence, and the prosecutor's arguments that defendant caused Windham's death, were therefore more prejudicial than probative and violated defendant's rights to due process and a fair trial. Defendant further asserts he suffered ineffective assistance of counsel because his trial counsel failed to object to Dr. Nagao's testimony and the prosecutor's argument.

Preliminarily, defendant forfeited his challenge to relevance and admissibility of Dr. Nagao's causation testimony by not objecting at trial. (Evid. Code, § 353; *People v. Doolin* (2009) 45 Cal.4th 390, 433.) Still, we address the merits of defendant's claim because he asserts the waiver results in ineffective assistance of counsel. "A defendant claiming ineffective assistance of counsel under the federal or state Constitutions must show both deficient performance under an objective standard of professional reasonableness and prejudice under a test of reasonable probability of a different outcome." (*People v. Osband* (1996) 13 Cal.4th 622, 664.)

Defendant did not suffer ineffective assistance of counsel because Dr. Nagao's causal testimony, and the prosecutor's arguments tying defendant to Windham's death, was relevant, highly probative, and not improperly speculative. (*People v. Kipp* (1998) 18 Cal.4th 349, 377 [failure to assert a meritless position does not demonstrate ineffective assistance of counsel].)

# I

## *Dr. Nagao's Testimony Was Relevant*

Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) "No evidence is admissible except relevant evidence." (Evid. Code,

§ 350.)  But relevant evidence may nonetheless be excluded under Evidence Code section 352 if the probative value of the evidence is outweighed by its prejudicial effect.  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404.)  As the California Supreme Court has explained, " 'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.  "[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case.  The stronger the evidence, the more it is 'prejudicial.'  The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.  In applying section 352, 'prejudicial' is not synonymous with 'damaging.' " ' "  (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214, italics omitted.)

Whether defendant caused Windham's death was not only relevant, but a central issue in the case.  Defendant was charged with, and found guilty of, inflicting harm on an elder "under circumstances or conditions likely to produce great bodily harm or *death*." (§ 368, subd. (b)(1), italics added.)  To establish this, the jury was entitled to consider whether great bodily harm or death did occur.  Though defendant was not directly charged with killing Windham, it was an underlying consideration of the elder abuse count as detailed in the jury instruction permitting consideration of death.  The prosecutor's arguments echoed the jury instruction on this count emphasizing to the jury they could consider if bodily harm or death did occur in order to find the circumstances were likely to produce great bodily harm or death, even if such finding was not necessary for a conviction.  The jury found this to be the case.  As the court summarized during sentencing, the jury believed Windham's "injuries at the hands of the defendant precipitated the fatal cardiac arrest" leading them to find he inflicted unjustifiable physical pain "likely to produce great bodily injury or death."

Defendant's reliance on the trial court refusing the prosecution's jury instruction is misplaced. The trial court did not find the prosecution could not link defendant's assault to Windham's death. Instead, it was concerned the proposed instruction may lead the jury to believe they had to necessarily find defendant killed Windham to convict him of elder abuse. The court agreed with the prosecution the jury could consider Windham's death, but it found they did not have to find a causal link with Windham's death to find the assault would likely cause great bodily harm or death. Consequently, the court ensured the focus of the instruction was the mandible injury but not to the exclusion of evidence establishing that defendant's punches resulted in Windham's death.

The central relevance of this evidence renders it highly probative, and defendant's arguments for a countervailing prejudicial effect are unavailing. Any prejudice from the evidence defendant caused Windham death is the type of prejudice that tends to prove defendant's guilt. Again, the jury found defendant was responsible for Windham's death in finding him guilty of elder abuse. This type of prejudice is not the emotionally charged evidence that could bias the jury against defendant with little bearing on relevant issues.

Dr. Nagao's testimony linking defendant's assault to Windham's death was therefore relevant in establishing the elder abuse charge and defendant's counsel's failure to object to it did not render ineffective assistance.

## II

### *Dr. Nagao's Testimony Was Not Speculative*

Expert witnesses are permitted to testify on the subject of their expertise. (Evid. Code, § 720.) A medical expert " 'is qualified "to give an opinion of the cause of a particular injury on the basis of the expert's deduction from the appearance of the injury itself." [Citation.] Such a diagnosis need not be based on certainty, but may be based on probability; the lack of absolute scientific certainty does not deprive the opinion of evidentiary value.' " (*Ramona v. Superior Court* (1997) 57 Cal.App.4th 107, 121.)

8

Dr. Nagao's opinion on the cause of Windham's death was plainly within his expertise as a forensic pathologist who had performed roughly a thousand prior autopsies. Dr. Nagao's opinion was also supported by the available evidence, including the surveillance video and the injuries discovered during the autopsy, and by the lack of any evidence there was another possible cause during the five hours from defendant's assault and Windham's death, including the paramedics. The nature of Windham's heart rendered it possible for him to have died without any excitement, and Dr. Nagao could not definitively say defendant's punches caused Windham's fractured jaw. But his conclusion did not need to be based on certainty to provide evidentiary value. (See *People v. Mendoza* (2000) 24 Cal.4th 130, 177 [doctor who had performed over 2,500 autopsies "was qualified to testify to the nature of the wounds shown" in a photograph].) Defendant therefore did not suffer ineffective assistance of counsel by his counsel failing to object to this proper expert testimony.

## DISPOSITION

The judgment is affirmed.


　　　　　　　　　　　　　　　　　　/s/_____
　　　　　　　　　　　　　　　　　　HOCH, J.



We concur:



/s/_____
RAYE, P. J.



/s/_____
RENNER, J.